*1554
 
 Buford, J.
 

 On February 10, 1930, W. B. Talley and wife, Flora M. Talley, entered into a contract with Russell Omohundro whereby Talley and wife agreed to sell' lot No. 11 in Block B. of J. R. Talley’s addition to Lakeland, Florida, to Omohundro and Omohundro agreed to buy said lot from Tálley and wife, under certain conditions.
 

 The pertinent condition of the contract to be considered here was:
 

 “It is understood and agreed by and between the parties hereto that the parties of the first part shall furnish unto the party of the second part within ten days from the date hereof an abstract brought to date and certified to by a reputable abstract company, showing that a merchantable fee simple title to the above mentioned lot is vested in W. B. Talley, free and clear of all liens and encumbrances except the lien, for State, County and Municipal taxes for the year 1930, which taxes for the year 1930 the party of the-second part assumes.
 

 “It is further understood and agreed by and between the parties to this agreement that the party of the second-part shall have a period'of ten days from the receipt of said abstract within which to examine the title to the property.
 

 “It is further understood by and between the parties hereto that in the event the said abstract and entries of record effecting said lot shows that a merchantable fee simple title to the above-mentioned lot is vested in W. B. Talley, free and clear of all lines-. and encumbrances, save and except the lien for State, county and municipal taxes for the year 1930, the parties to this agreement will consummate this agreement by the parties of the first part executing and delivering-unto the party of the second part a good
 
 *1555
 
 and sufficient warrant deed of conveyance conveying unto the party of the second part the above described lot and by the party of the second part, concurrent with the execution and delivery of said deed, paying unto the párties of the first part the said sum of $4500.00.
 

 “It is further agreed by and between the parties hereto that in the event the said examination fails to show that a fee simple title to the above mentioned lot is vested in the said W. B. Talley free and clear of all liens and encumbrances, then the parties of the first part will, with all due speed, take such steps as will render the fee simple title to said land vested in W. B. Talley, free and clear of all liens and encumbrances, in case the defects are such that can be corrected so as to vest the fee simple title to said land in W. B. Talley, at which time this contract shall be consummated by the execution and delivery of said deed and the payment of said money. Should, however, it be found upon the examination of the title of such land that it is impossible to vest the fee simple title of said lot in and to the said W. B. Talley, then and in that event the parties of the first part shall refund unto the party of the second part the said sum of $500.00, and the party of the second part will execute and deliver unto the parties of the first part an instrument duly relieving the parties of the first part from any other or further obligations growing out of the said contract. ’ ’
 

 Five Hundred ($500) Dollars was paid in cash on the contract. Upon the abstract being furnished Omohundro refused to accept the title and to perform the contract. The Talleys presented a wararnty deed properly executed and insisted that Omohundro carry out his contract. Upon
 
 *1556
 
 his refusal to do so Talleys entered suit for specific performance. Omohundro answered, setting up in his answer an allegation to the effect that the Talleys were not seized and possessed of good merchantable fee simple title to the lot described in thát it was contended that the deed from J. R. Talley to W. B. Talley did not pass a fee simple title, but only a life estate. Copy of the deed complained of was attached to the answer and a stipulation was entered into between the parties as follows:
 

 “It is hereby stipulated and agreed by and between the parties to this suit, by their undersigned solicitors, as follows:
 

 “1. That on the 21st day of June, A. D. 1921, one J. R. Talley was the owner in fee simple and in the actual possession of the lot involved in this suit.
 

 “2. That on the date last above mentioned the said J. R. Talley signed, sealed and delivered unto W. B. Talley, one of the complainants herein, a certain deed of conveyance, a certified copy of which is attached to the defendant’s answer and made a part of this stipulation by reference; that concurrent with the execution of said deed of conveyance J. R. Talley delivered unto W. B. Talley the possession of said lot, and that since such time W. B. Talley has been in the actual possession of said lot.
 

 “3. That on February 10, 1930, the complainants and the defendant executed the contract of sale, a copy of which is attached to the bill of complaint and made a part of this stipulation by reference.
 

 ‘ ‘ 4. That the complainants have done and performed all mattei’S and things to be done and performed by them, except insofar as prevented by the defendant, providing that W. B. Talley acquired a fee simple title to the lot in question under and. by virtue of the
 
 *1557
 
 provisions of the deed, a certified copy of which is attached to the defendant’s answer.
 

 “5. That the defendant is ready, able and willing to purchase the said lot of and from the complainants in accordance with his contract of sale and to pay the complainants the balance of the purchase price therefor in ease W. B. Talley, under and by virtue of the terms of said deed acquired a fee simple title to said lot, but refused to accept a deed therefor from the complainants and to pay to them the balance of the purchase price for the sole reason that he does not believe that W. B. Talley, under the provisions of said deed, acquired a fee simple title to said lot.
 

 “6. That the Court enter a decree herein granting unto the complainants the relief prayed for in their bill of complaint, in case W. B. Talley acquired a fee simple title to said lot under and by virtue of the provisions of said deed, but enter a decree denying unto the complainants such relief in ease W. B. Talley acquired an estate less than a fee simple estate in and to said lot under the- provisions of said deed.
 

 “7. It is further stipulated and agreed between the parties hereto that this cause be submitted to one of the Judges of the above Court for a final decision upon the bill of complaint, the answer of the defendant and this stipulation of the parties.”
 

 Pursuant to this stipulation a deefee was entered in favor of Talley, from which decree Omohundro has taken this appeal.
 

 The deed in question is as follows:
 

 “THIS DEED, Made the 27th day of June, A. D. 1921, by J. R. Talley, a widower, of the County of
 
 *1558
 
 Polk, State of Florida, hereinafter called the grantor; to W. B. Talley, his son, of the County of Polk, State of Florida, hereinafter called the grantee.
 

 “WITNESSETH THAT the said grantor, in consideration of Ten. Dollars, Love and Affection, the receipt whereof is hereby acknowledged, do give, grant, bargain, sell, alien, remise, release, enfeoff, convey and confirm unto the said grantee, and his heirs and assigns in fee simple, the lands situate in Polk County, State of Florida, described as follows:
 

 “Lot (11), Block “B”, according to revised map of J. R. Talley’s addition to Lakeland, Florida. It is expressly understood by the grantor and grantee herein that the above estate is hereby transferred to the second party as long as he may live and at his death goes to his heirs.
 

 (Rev. Stamp. 50c cancelled)
 

 “TO HAVE AND TO HOLD the same together with the heriditaments and appurtenances, unto the said grantee, and his heirs and assigns in fee simple.
 

 “AND the said grantor, for himself and his heirs and legal representatives, covenant with said grantee, his heirs, legal representatives and assigns:
 

 “That said grantor is indefeasibly seized of said land in fee simple; that said grantor has full power and lawful right to convey said lands in fee simple, as aforesaid; that it shall be lawful for said grantee, his heirs, legal representatives and assigns, at all times peaceably and quietly to enter upon, hold, occupy and enjoy said land; that said land is free from all incumbrances; that said grantor, his heirs and legal representatives, will make such further assurances to perfect the fee simple title to said land in said grantee, his heirs, legal representatives and assigns as may
 
 *1559
 
 reasonably be required; and that said grantor does hereby fully warrant the title to said land and will defend the same against the lawful claims of all persons Whomsoever.
 

 “WITNESS the hand and seal of said grantor, the day and year first above written.
 

 “Signed, Sealed and Delivered in the presence of:
 

 Effie Dick
 

 M. G. Waring
 

 J. R. Talley (SEAL) ”
 

 It. will be observed that the deed by its granting clause and also by its habendum conveys a fee simple title from J. R. Talley to W. B. Talley.
 

 It is contended that the language interpolated in the deed following the description of the property conveyed, “It is expressly understood by the grantor and grantee herein that the above estate is hereby transferred to the second party as long as he may live, and at his death goes to his heirs” limits the estate conveyed to. W. B. Talley to a life estate.
 

 A good deal has been said by counsel for both parties to this suit in briefs in regard to the Rule in Shelley’s Case.
 

 There can be no question that the rule in Shelley’s Case was a common law rule of property when the common law was adopted as the law of Florida and that the rule in Shelley’s Case as a rule of property has not been abridged, modtified or abolished by statute in this State. If the language above quoted as interpolated after the description in the deed should be construed as a limitation so that the construction of the deed must be based on the Rule in Shelley’s Case then under such rule we would necessarily hold that the deed passed a fee simple title to W. B. Talley and that he had full right and authority
 
 *1560
 
 to convey a fee simple title. But, the Rule in Shelley’s Case has no application here.
 

 The clause above quoted from the deed can have no controlling effect upon the quality or quantity of the estate created. The estate transferred by the conveyance was an estate in fee simple. The interpolated clause in the deed merely asserts that it has been agreed that “the above estate is hereby transferred to the second party as long as he may live and at his death goes to his heirs”, which can have no greater effect than to evidence that there was some sort of understanding between the parties that the grantee would not convey the estate during his life time. This, however, would only constitute a moral obligation and would have no effect whatever upon the estate vested in the grantee by the terms of the deed.
 

 It has been observed that the grantee went into immediate possession of the property when the same was conveyed to him by the grantor who had theretofore been in possession. The clause interpolated into the deed hereinabove quoted was properly treated by the court below as mere surplusage and as having no effect upon the title.
 

 The decree should be affirmed and it is so ordered.
 

 Affirmed.
 

 Whitfield, P. J. and Strum, J., concur.
 

 Terrell, C. J. and Ellis, J., concur.
 

 Brown, J., concurs in the conclusion.